1

THOMAS A. BOJO
EVELIA GILVILLALOBOS

2

3425 Parsley Lane

3

Bakersfield, CA. 93309
Telephone: (775) 954-6614

4

Telephone: (661) 304-0780

5

Pro Se Defendants

6



FILED

OCT 17 2025

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

7

IN THE UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10

UNITED STATES OF AMERICA,

11

Plaintiff,

12

v.

13

THOMAS A. BOJO,

14

Defendant.

15

UNITED STATES OF AMERICA,

16

Plaintiff,

v.

17

18

EVELIA GILVILLALOBOS,

19

Defendant.

CASE NO. 1:24-PO-00062-SAB

Appeal

**MOTION FOR REVIEW OF MAGISTRATE
JUDGE'S DECISION BY DISTRICT
COURT**

[Filed Pursuant to Fed. R. Crim. P. 58(g)(2)(B),
Local Rule 303(c) and 28 U.S.C. § 636(a)(3) and
(c)(4)]

20

21

**I.    INTRODUCTION**

22

23

Defendants Evelia Gil and Thomas Anthony Bojo respectfully move this Court, pursuant to 28

24

U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b), for de novo review and vacatur of the magistrate

25

judge's findings, judgment, and sentence entered in these consolidated petty-offense matters. The

26

record reveals systemic constitutional violations, jurisdictional errors, and prosecutorial

27

misconduct that deprived Defendants of due process, fair trial rights, and a lawful sentence. Each

28

of the nine grounds set forth herein independently warrants vacatur; collectively, they

demonstrate a proceeding fundamentally inconsistent with the rule of law.

## II. BACKGROUND

This section will detail the events of March 11, 2024, at the IRS Taxpayer Assistance

Center in Fresno, California; the issuance of petty-offense citations under 41 C.F.R. §§ 102-

74.385 and 102-74.390; and the procedural history culminating in the magistrate's judgment and

sentencing.

## III. STANDARD OF REVIEW

Review of a magistrate judge's order or findings is governed by **28 U.S.C. § 636(b)(1)**,

**Fed. R. Crim. P. 59**, and **Local Rule 303(f)**. A district judge must **conduct a de novo**

**determination** of those portions of the magistrate's findings or recommendations to which

objection is made, and may accept, reject, or modify the magistrate's decision in whole or in

part.

Under § 636(b)(1)(A), non-dispositive rulings may be set aside if "clearly erroneous or

contrary to law." For dispositive matters—including rulings affecting a defendant's liberty or the

outcome of a criminal proceeding—the district judge's review is **de novo**. *Reyna-Tapia*, 328

F.3d at 1121; *Abonce-Barrera*, 257 F.3d at 968.

The reviewing court owes **no deference** to factual findings made without evidentiary

support or to legal conclusions based on an erroneous interpretation of constitutional principles,

federal regulations, or the Code of Federal Regulations. See *United States v. Silverman*, 861 F.2d

571, 576 (9th Cir. 1988).

Whereas here, the magistrate's findings implicate **First Amendment rights**, **jurisdictional defects**, or **procedural irregularities** under the **Federal Rules of Criminal Procedure**, the standard of review is heightened; constitutional questions must receive **independent and searching review** by the Article III judge. *Bose Corp. v. Consumers Union*, 466 U.S. 485, 499 (1984).

### Application of Standard

In this case, the magistrate judge's findings and orders warrant **de novo review** because they implicate both **dispositive issues** and **constitutional rights**. The magistrate's conclusions were not merely procedural but directly determined the outcome of the case and the liberty interests of the defendants, thereby falling squarely within **28 U.S.C. § 636(b)(1)(B)** and **Fed. R. Crim. P. 59(b)**.

Specifically, the magistrate judge:

1. **Failed to apply controlling constitutional standards** by disregarding the defendants' **First Amendment right** to record and petition their government for redress of grievances, conduct protected under *Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984), and *United States v. Grace*, 461 U.S. 171 (1983).

2. **Misapplied the Code of Federal Regulations**, particularly **41 C.F.R. §§ 102-74.385 and 102-74.390**, by extending them beyond their lawful scope and treating them as criminal statutes despite the absence of any express penalty authority under Title 18 or 40 U.S.C. § 1315.

3. **Overlooked material factual discrepancies** between the government's probable cause statements, surveillance evidence, and witness testimony, effectively substituting conjecture for the evidentiary record.

4. **Ignored jurisdictional objections** under **28 U.S.C. § 636(c)(2)** by proceeding without valid consent for trial and sentencing before a magistrate judge.

Each of these errors is **contrary to law** and requires **independent review** by the presiding district judge. When a magistrate's findings conflict with established First Amendment precedent, disregard evidentiary standards, or exceed the statutory jurisdiction granted by Congress, the district judge's duty is not deferential—it is corrective. *Reyna-Tapia*, 328 F.3d at 1121; *Silverman*, 861 F.2d at 576.

Accordingly, this Court should vacate or modify the magistrate's findings and conduct a **de novo determination** of the record, consistent with the constitutional and statutory mandates governing judicial review.

## IV. GROUNDS FOR REVIEW

**Ground One: <u>Lack of Jurisdiction and Invalid Consent Under 28 U.S.C. § 636(c)(2) and 18 U.S.C. § 3401(b)</u>**

The magistrate judge lacked lawful authority to enter judgment or impose sentence because neither defendant gave valid, knowing, and voluntary consent to proceed before a magistrate. Jurisdiction before a magistrate judge in a criminal matter exists only upon *express consent* of all parties. *See* 28 U.S.C. § 636(c)(1)–(2); 18 U.S.C. § 3401(b); Fed. R. Crim. P. 58(b)(3).

The record contains no signed consent forms and no on-the-record colloquy confirming that the defendants understood or agreed to proceed before a magistrate judge. Jurisdiction cannot be implied or presumed. *Kofoed v. Ivey*, 235 F.3d 1257 (10th Cir. 2000); *United States v. Bryant*, 753 F.3d 1140 (9th Cir. 2014).

Section 3401(b) explicitly provides that a magistrate judge "may not proceed to trial, judgment, or sentencing unless the defendant has expressly consented to be tried before the magistrate judge." Likewise, Rule 58(b)(3) mandates that a magistrate judge must inform each defendant of "the right to trial, judgment, and sentencing before a district judge" and may not proceed absent consent. These statutory safeguards apply equally in petty-offense prosecutions and are jurisdictional in nature.

Here, the defendants expressly requested that their case be heard before an Article III district judge. That request was denied, yet the magistrate judge nonetheless assumed jurisdiction, conducted trial, rendered judgment, and imposed sentence. This sequence of events violated the plain text of § 636(c)(2), § 3401(b), and Rule 58(b)(3), each of which conditions a magistrate's authority upon the defendants' voluntary and informed consent.

The Supreme Court has made clear that a magistrate's jurisdiction arises solely from party consent, and proceedings conducted without it are **void ab initio**. *Gomez v. United States*, 490 U.S. 858, 872 (1989); *Peretz v. United States*, 501 U.S. 923, 936 (1991); *United States v. Harden*, 758 F.3d 886, 891 (7th Cir. 2014). The Ninth Circuit likewise holds that consent cannot be inferred from silence, participation, or acquiescence. *United States v. Neville*, 985 F.2d 992, 999 (9th Cir. 1993).

By denying defendants' express request for a district-judge trial and proceeding without valid consent, the magistrate violated Article III, § 1 of the Constitution, 28 U.S.C. § 636(b)(1), and the Due Process Clause of the Fifth Amendment. This constitutes a *structural* jurisdictional error—one that infects the entire proceeding and mandates automatic vacatur without resort to harmless-error analysis. *Gomez*, 490 U.S. at 876; *Nguyen v. United States*, 539 U.S. 69, 77 (2003).

Because the magistrate's assumption of jurisdiction was ultra vires, all resulting proceedings—including the trial, judgment, and sentence—are nullities as a matter of law. The case must therefore be vacated and remanded for proceedings before a properly empowered Article III judge.

**Ground Two: <u>Defective Charging Documents and Lack of Statutory Penalty Authority Under Rule 58(b)(1)</u>**

The violation notices and probable-cause statements issued to Defendants fail to allege a cognizable criminal offense under federal law. Each citation identifies only regulatory provisions—41 C.F.R. § 102-74.385 ("Non-Conformity with Signs and Directions") and 41 C.F.R. § 102-74.390(a) ("Loitering, exhibiting disorderly or other conduct that creates loud or unusual noise/nuisance")—without identifying any *statutory* penalty authority that transforms those administrative regulations into criminal offenses.

Under Federal Rule of Criminal Procedure 58(b)(1), a petty-offense citation must set forth both "the essential facts constituting the offense charged" and "the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." The cited CFR sections

merely prescribe standards of conduct applicable on federal property; they are **administrative regulations**, not self-executing criminal statutes. Criminal enforcement arises, if at all, through the penalty-incorporation clause in 41 C.F.R. § 102-74.450, which references the authority of 40 U.S.C. § 1315(c) (formerly § 318c). Neither provision appears anywhere on the citations or in the probable-cause statements.

Because the charging instruments omit the statutory foundation that provides criminal penalty authority, they fail to allege an offense punishable under federal law. This omission violates Rule 58(b)(1), as well as the Fifth and Sixth Amendments' guarantees of due process and notice. The Ninth Circuit has long held that omission of an essential statutory element deprives the court of jurisdiction. *See United States v. Du Bo*, 186 F.3d 1177 (9th Cir. 1999) (indictment defective where it omitted essential element); *United States v. Mancuso*, 718 F.3d 780 (9th Cir. 2013).

Comparable cases confirm that such omissions render petty-offense citations void. In *United States v. Burch*, 2022 WL 375472 (D. Md. 2022), the district court dismissed a petty-offense citation issued under the same CFR provisions for failure to cite the penalty authority in 40 U.S.C. § 1315(c). The reasoning applies with equal force here: the government's omission of a penalty clause leaves the citation jurisdictionally defective on its face.

Moreover, the failure to identify the governing penalty statute deprived Defendants of fair notice regarding whether the allegations were civil or criminal in nature, the potential range of punishment, and the statutory source of prosecutorial authority. This lack of clarity prevented Defendants from mounting an informed defense and deprived the Court of subject-matter jurisdiction to adjudicate the matter.

DEFENDANTS' MOTION FOR REVIEW          7          U.S. V. THOMAS A. BOJO
OF MAGISTRATE JUDGE'S DECISION                       U.S. V. EVELIA GILVILLALOBOS
BY DISTRICT COURT

The Fifth Amendment requires that an accused be informed of "the nature and cause of the accusation," and Rule 58(b)(1) codifies that same principle for petty offenses. By charging only the regulatory text—without reference to a penal statute—the government failed to invoke federal criminal jurisdiction. The citations therefore do not state an offense "against the laws of the United States," as required by 18 U.S.C. § 3231, and must be dismissed.

Accordingly, the convictions should be vacated as a matter of law for want of a valid charging instrument, and the proceedings below declared void for lack of jurisdiction.

**Ground Three: <u>Unconstitutional and Selective Enforcement of Federal Regulations in Violation of the First Amendment</u>**

Even assuming arguendo that the cited provisions of the Code of Federal Regulations—41 C.F.R. §§ 102-74.385 and 102-74.390—are facially valid, their enforcement against Defendants was unconstitutional because it targeted protected expressive and petitioning activity. The government's application of these regulations violated the First Amendment and controlling Supreme Court precedent. Administrative regulations cannot supersede the Constitution, and any enforcement thereof must conform to fundamental free-speech protections.

In *Board of Airport Commissioners v. Jews for Jesus*, 482 U.S. 569 (1987), the Supreme Court held that a blanket prohibition on expressive activity in a public space is facially unconstitutional. Likewise, in *United States v. Grace*, 461 U.S. 171 (1983), the Court invalidated restrictions on peaceful expressive conduct on public sidewalks surrounding a federal building. Together, these decisions make clear that government restrictions on expression must be

1    reasonable, content-neutral, and narrowly tailored to serve a significant governmental interest.

2    Selective or retaliatory enforcement based on viewpoint or message is per se unconstitutional.

3

4    Here, the government's enforcement of the CFR provisions was not viewpoint-neutral.

5    The record shows that Defendants were cited solely because they were filming and verbally

6    petitioning the Internal Revenue Service inside a publicly accessible federal facility—conduct

7    squarely protected under the First Amendment. Comparable behavior by other visitors and

8    employees went unpunished, demonstrating that the regulations were applied with "an evil eye

9

10   and an unequal hand." *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886). Such selective

11   enforcement violates both the First and Fifth Amendments. *See United States v. Armstrong*, 517

12   U.S. 456, 463–65 (1996) (selective prosecution to suppress constitutional rights violates equal

13   protection and due process).

14

15   Federal property is not a First Amendment-free zone. Even in limited or nonpublic

16   forums, speech restrictions must be reasonable and viewpoint-neutral. *Cornelius v. NAACP*

17   *Legal Defense Fund*, 473 U.S. 788, 800 (1985). The IRS Taxpayer Assistance Center in Fresno

18   is a public-access facility where members of the public routinely enter to conduct business with

19   the government. Defendants' peaceful filming, inquiry, and delivery of notarized petitions

20   constituted core expressive and petitioning activity. The government's use of 41 C.F.R. §§ 102-

21   74.385 and 102-74.390 as a pretext to silence this speech converted otherwise neutral

22   administrative rules into unconstitutional tools of suppression.

23

24

25   The Supreme Court has consistently rejected government attempts to punish citizens for

26   expressing criticism of officials or agencies. *City of Houston v. Hill*, 482 U.S. 451, 462–63

27   (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge

28

directed at police officers."). That principle applies with equal or greater force here, where federal employees used their authority to silence and penalize citizens lawfully documenting government conduct.

The evidence shows that enforcement decisions were motivated not by legitimate security concerns, but by personal animus and institutional embarrassment. Such conduct constitutes retaliation for protected expression in violation of *Hartman v. Moore*, 547 U.S. 250, 256–59 (2006), and *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722–23 (2019). Government officials may not invoke "security" or "disorder" as pretexts for viewpoint discrimination. The Constitution demands more than administrative convenience or discomfort in the face of criticism.

Accordingly, the enforcement of 41 C.F.R. §§ 102-74.385 and 102-74.390 in this case was unreasonable, retaliatory, and viewpoint-based. It violated Defendants' rights to free expression and to petition the government, as well as their right to equal protection under the law. The resulting convictions are therefore void and must be vacated as a matter of constitutional law.

**Ground Four: <u>Violation of First Amendment Rights — Unconstitutional and Viewpoint-Discriminatory Enforcement of Federal Regulations</u>**

The magistrate judge failed to recognize that Defendants' conduct—filming and attempting to submit notarized correspondence to the Internal Revenue Service—constituted core expressive and petitioning activity protected by the First Amendment. Their actions were expressive both in form and purpose: documenting official behavior in a public-facing federal facility, seeking redress of grievances, and holding government employees accountable. Such

1  conduct lies at the heart of the freedoms of speech, press, and petition guaranteed by the

2  Constitution.

3

4    A.    **Protected Nature of Defendants' Expression**

5

6    The confrontation arose only after IRS employees refused to accept Defendants'

7  notarized submissions without an appointment, despite clear internal policy authorizing

8  "document drop-off" for certain filings. *See* IRM 21.3.4.2.4.2(10). Fully aware of their rights and

9  the agency's obligations, Defendants verbally—but peacefully—insisted that IRS staff comply

10  with established procedure. Witnesses described the Defendants' tone as "loud," but undisputed

11  evidence confirms that their speech contained no threats, profanity, or "fighting words." Volume

12  alone does not remove speech from constitutional protection. *Terminiello v. City of Chicago*, 337

13  U.S. 1, 4–5 (1949); *Cohen v. California*, 403 U.S. 15, 25 (1971). The escalation that followed

14  was triggered not by disorderly intent, but by the employees' retaliatory reaction to

15  constitutionally protected criticism.

16

17    B.    **Retaliatory Use of Federal Authority**

18

19    IRS Manager **Sandeep Kaur** and Assistant Manager **Misty Almaraz-Hall**, acting under

20  color of federal authority, unlawfully ordered Defendants to cease recording and to leave the

21  premises. They mischaracterized the lawful act of recording and submitting taxpayer documents

22  as a "security threat," activated the building's panic alarm, and summoned armed private security

23  contractors (Triple Canopy, under DHS contract) and a Federal Protective Service (FPS) officer

24  to enforce their unlawful directive. This deliberate escalation weaponized federal security

25  resources to suppress criticism and punish lawful expressive activity.

DEFENDANTS' MOTION FOR REVIEW             11             U.S. V. THOMAS A. BOJO
OF MAGISTRATE JUDGE'S DECISION                          U.S. V. EVELIA GILVILLALOBOS
BY DISTRICT COURT

Federal employees and agents act **"under color of federal law"** when they misuse power "possessed by virtue of federal office and made possible only because the wrongdoer is clothed with the authority of federal law." *See United States v. Classic*, 313 U.S. 299, 326 (1941); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Their conduct is thus actionable and punishable under **18 U.S.C. § 242** (Deprivation of Rights Under Color of Law) and **18 U.S.C. § 241** (Conspiracy Against Rights). These provisions make it a federal crime for any official or person acting under color of federal authority to willfully deprive another of rights secured by the Constitution or laws of the United States.

Such retaliatory actions constitute both *prior restraint* and *punitive retaliation*, each independently violative of the First Amendment. Government officials may not invoke "security" as a pretext to silence criticism or retaliate against citizens engaged in protected expression. *Hartman v. Moore*, 547 U.S. 250, 256–59 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722–23 (2019).

## C.    Failure to Apply Proper First Amendment Forum Analysis

The IRS Taxpayer Assistance Center lobby in Fresno is open to the public and designed for interaction between taxpayers and government employees. Such spaces are at least **limited public forums** subject to First Amendment protection. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44–46 (1983); *United States v. Grace*, 461 U.S. 171, 177–80 (1983); *United States v. Kokinda*, 497 U.S. 720, 727–30 (1990) (plurality). Even in nonpublic forums, restrictions must be reasonable and viewpoint-neutral. *Cornelius v. NAACP Legal Defense Fund*, 473 U.S. 788, 800 (1985). No showing was made here that filming or peaceful petitioning posed any threat to safety or interfered with agency operations.

By permitting agency personnel to ban filming and eject Defendants solely because their expression was critical, the magistrate sanctioned viewpoint discrimination—an impermissible basis for restricting speech in any forum. *Board of Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 574 (1987); *City of Houston v. Hill*, 482 U.S. 451, 462 (1987); *Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (en banc). The government's response to Defendants' speech was not neutral enforcement of regulations but retaliatory suppression of dissent.

### D.    <u>Constitutional Consequences</u>

The record contains no evidence that Defendants' conduct disrupted agency operations or created any safety concern that could justify suppression of speech. Instead, the evidence demonstrates that federal employees and DHS-contracted security personnel invoked federal authority to chill criticism and punish expressive conduct. Such misuse of authority under color of federal law is exactly the abuse condemned by **18 U.S.C. § 242** and violates the core protections of the First Amendment.

As the Supreme Court observed, "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. at 462–63.

Accordingly, the magistrate's acceptance of these citations as lawful restrictions on expressive conduct was contrary to the Constitution, contrary to established Ninth Circuit precedent, and contrary to law. The convictions must therefore be vacated.

**Ground Five: <u>Government Misconduct and Violation of 18 U.S.C. § 1519 (Obstruction of Justice)</u>**

The record demonstrates that government agents and witnesses— including IRS employees and DHS-contracted security personnel acting under color of federal authority— knowingly made false statements, concealed material evidence, and manipulated exhibits both before and during trial. These actions constitute prosecutorial and evidentiary misconduct in violation of **18 U.S.C. § 1519** (Obstruction of Justice), **18 U.S.C. § 1505** (Obstruction of Proceedings Before Departments, Agencies, and Committees), and **18 U.S.C. § 242** (Deprivation of Rights Under Color of Law).

A.    **<u>False Statements and Concealment of Material Evidence</u>**

Prior to trial, the same government witnesses provided multiple, materially inconsistent statements to investigators—each conflicting with the others and with the objective video and audio evidence in the record. The Office of the Assistant United States Attorney failed to reconcile or even review these contradictions. Had the government performed the most basic evidentiary comparison, it would have discovered that its own witnesses "never told the same story twice." The failure to disclose or correct these inconsistencies violates the government's duty of candor and its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972).

The misconduct extended further. The government selectively edited or altered video recordings presented as evidence and concealed notarized taxpayer documents submitted by Defendants on March 11, 2024—records that were later denied or omitted from the evidentiary

file. Concealment or falsification of materials relevant to a judicial proceeding constitutes obstruction under **18 U.S.C. § 1519**, which penalizes anyone who "knowingly alters, destroys, conceals, or covers up any record, document, or tangible object with the intent to impede, obstruct, or influence" the investigation or disposition of a federal matter.

Even if this Court declines to make a formal finding of criminal obstruction, these acts undeniably undermine the integrity of the judicial process and render the proceedings fundamentally unfair. *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (dismissal warranted when government misconduct "so infects the proceedings as to render them fundamentally unfair").

## B.    <u>Manipulation of Witness Testimony and Judicial Error</u>

At trial, the Assistant United States Attorney and the presiding magistrate improperly permitted a key IRS witness to "explain what she meant" rather than to testify to "what she said." This allowed the witness to revise her prior statement and insulate herself from impeachment, in direct violation of the Federal Rules of Evidence:

- **Rule 602 — Lack of Personal Knowledge:** A witness may testify only to matters personally observed. "Explaining what one meant" substitutes speculation for fact.
- **Rule 611(b) — Scope of Cross-Examination:** Cross-examination is limited to the subject matter of direct testimony. Allowing reinterpretation expanded testimony beyond its original scope.

- **Rule 1002 — Best Evidence Rule:** The original statement, transcript, or recording controls. Replacing that evidence with a later "clarification" violates the rule's core principle that the original evidence speaks for itself.

This judicial error fundamentally altered the evidentiary record and deprived Defendants of their Sixth Amendment right to confront and impeach adverse witnesses. The Supreme Court has made clear that denial of effective cross-examination constitutes constitutional error. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (government may not knowingly allow false or misleading testimony to stand uncorrected).

### C.     Constitutional and Jurisdictional Implications

By permitting the government to present altered evidence and revised testimony while concealing exculpatory materials, the prosecution and the court effectively sanctioned the deprivation of Defendants' rights under the **Fifth** and **Sixth Amendments**. Such conduct, undertaken under color of federal authority, falls squarely within the prohibitions of **18 U.S.C. § 242**, which criminalizes the willful deprivation of constitutional rights by any person acting under color of law.

These compounded violations—alteration of evidence, suppression of exculpatory documents, and judicial acceptance of reconstructed testimony—erode public confidence in the integrity of the courts and strike at the core of due process. As the Ninth Circuit held in *Chapman*, when prosecutorial or governmental misconduct "affects the fairness, integrity, or public reputation of judicial proceedings," the only appropriate remedy is vacatur.

**D.**    **Remedy**

Because the government's misconduct in this case tainted the evidentiary record and undermined the fairness of the proceedings, the convictions cannot stand. Dismissal or vacatur is warranted under the Court's supervisory authority to protect the integrity of the judicial process and to deter similar misconduct in future prosecutions. *See United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008); *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (affirming dismissal for pervasive Brady violations).

**Ground Six: Exclusion of Relevant and Exculpatory Evidence — Injury to Defendant Evelia Gil**

The magistrate court's decision to exclude evidence of Defendant Evelia Gil's hand injury—sustained during the March 11, 2024 encounter at the IRS Taxpayer Assistance Center (TAC) in Fresno—constituted reversible error. The exclusion violated the Federal Rules of Evidence, the Fifth and Sixth Amendments, and Defendants' right to present a complete defense.

**A.**    **Relevance and Admissibility Under Rules 401 and 402**

Under Federal Rules of Evidence 401 and 402, evidence is relevant if it has *any tendency* to make a fact more or less probable and if that fact is material to the case. The injury evidence easily meets this standard because it tended to show:

1. the reasonableness of Ms. Gil's conduct and demeanor during the incident;

2. the excessive and unjustified response by federal security personnel; and

3. the falsity of government testimony minimizing or denying the use of force.

Evidence bearing directly on the credibility of key witnesses and the proportionality of the government's response is plainly relevant. *United States v. Abel*, 469 U.S. 45, 51–52 (1984). The injury corroborated Defendants' account that DHS-contracted security officers used unnecessary force against a non-threatening taxpayer attempting to submit paperwork—a fact central to both guilt and mitigation.

## B.    Misapplication of Rule 403

The government's reliance on Rule 403 to exclude the evidence as "prejudicial" was misplaced. Rule 403 authorizes exclusion only when probative value is *substantially outweighed* by unfair prejudice, not merely because the evidence is damaging to the prosecution. *United States v. Curtis*, 344 F.3d 1057, 1067 (9th Cir. 2003). Here, the probative value of the injury evidence—demonstrating physical harm, disproving "no-force" testimony, and supporting a claim of governmental overreach—was substantial. Any potential prejudice was not unfair but rather the natural consequence of truthful, relevant proof.

## C.    Constitutional Right to Present a Complete Defense

The Fifth and Sixth Amendments guarantee every defendant the right to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Excluding evidence of Ms. Gil's injury prevented the jury and the court from hearing critical exculpatory facts and deprived Defendants of the ability to contextualize their reactions. The evidence was not collateral; it directly addressed whether Defendants' conduct was reasonable under the circumstances and whether the government's witnesses were credible.

Moreover, the exclusion violated the Due Process Clause by permitting the government to maintain a false narrative that no force was used. The prosecution may not knowingly present or allow false impressions to stand uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). By suppressing evidence of injury, the government effectively invited the court to rely on an incomplete and misleading factual record.

### D.      <u>Sentencing Implications and Mitigation</u>

Even if the injury evidence were deemed unnecessary for trial, it remained relevant at sentencing. *United States v. Tucker*, 404 U.S. 443, 447 (1972), holds that sentencing courts must consider the "fullest information possible concerning the defendant's life and characteristics." Ms. Gil's injury, sustained while engaging in peaceful and protected activity, constituted powerful mitigating evidence. Its exclusion deprived the sentencing court of a complete and accurate understanding of the circumstances surrounding the offense.

### E.      <u>Prejudicial Effect and Remedy</u>

The Ninth Circuit consistently reverses convictions where exculpatory or credibility-related evidence has been excluded under erroneous claims of irrelevance. *United States v. Stevenson*, 834 F.3d 80, 84 (9th Cir. 2016); *United States v. Peters*, 937 F.2d 1422, 1425 (9th Cir. 1991). Because the excluded evidence directly bore on the credibility of government witnesses and the justification for Defendants' actions, the error was not harmless. The exclusion deprived Defendants of a fair opportunity to defend against the charges and to establish mitigating circumstances at sentencing.

1    Accordingly, the exclusion of injury evidence constituted reversible legal error. The

2    judgment should be vacated, and the matter remanded for new proceedings that fully admit and

3

4    consider this exculpatory and material evidence.

5    **Ground Seven: <u>Government Misuse of Treasury Inspector General for Tax Administration</u>**

6    **<u>(TIGTA) Complaint – Retaliation and Due Process Violations</u>**

7

8    The government's acquisition and use of Defendants' formal complaint to the Treasury

9    Inspector General for Tax Administration (TIGTA), submitted on March 1, 2024, constitutes

10

11   improper and retaliatory conduct that violates federal law, constitutional protections, and the

12   integrity of the judicial process. The TIGTA complaint—filed by Defendants to report

13   misconduct by IRS employees and security personnel involved in this case—was later obtained

14   by the Assistant United States Attorney (AUSA) and introduced as an exhibit at sentencing. This

15   misuse of a protected oversight complaint is unlawful, retaliatory, and prejudicial.

16

17   **A.    <u>Statutory and Regulatory Protections for TIGTA Complaints</u>**

18

19   TIGTA operates as an independent oversight body under the **Inspector General Act of**

20   **1978**, 5 U.S.C. App. 3. By statute, TIGTA's investigations and complaint records are

21

22   confidential and may not be disclosed or used for purposes unrelated to oversight or

23   enforcement.

24

25   Section 7(b) of the Act expressly prohibits the Inspector General from disclosing the

26   identity of a complainant or related information "unless the Inspector General determines such

27   disclosure is unavoidable during the course of the investigation." Similarly, **5 U.S.C. § 552(b)(7)**

28

1  exempts investigatory materials from disclosure when release would interfere with enforcement
2  proceedings or reveal confidential sources.

4       A TIGTA complaint filed by a private citizen is therefore protected information. It may
5  not lawfully be shared with, or used by, a prosecuting authority against the complainant, absent
6  formal referral for prosecution based on the *content* of the complaint—not the identity or intent
7  of the complainant. Turning the complaint over to the AUSA and submitting it into evidence at
8  sentencing violated these statutory protections and subverted the very purpose of Inspector
9
10  General oversight.

11

12     **B.     Unauthorized Disclosure Under the Privacy Act**

13

14      The **Privacy Act of 1974**, 5 U.S.C. § 552a(b), prohibits any agency from disclosing a
15  record contained in a system of records "to any person or other agency" except for purposes
16  consistent with the reason it was collected. The TIGTA complaint was collected for internal
17  investigation and accountability, not for use as prosecutorial evidence. Disclosure or use of that
18  record in a sentencing proceeding constitutes an *unauthorized secondary use* under § 552a(b)
19
20  and violates the complainant's privacy rights.

21

22     **C.     Retaliation and Violation of the Right to Petition**

23

24      By introducing Defendants' TIGTA complaint as an exhibit at sentencing, the
25  government effectively punished Defendants for exercising their constitutional right "to petition
26  the Government for a redress of grievances." *U.S. Const. amend. I.* Filing an Inspector General
27  complaint is a protected form of petitioning activity. Retaliating against a citizen for engaging in
28  that activity violates the First Amendment and constitutes viewpoint-based discrimination.

*Hartman v. Moore*, 547 U.S. 250, 256–59 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722–23 (2019).

The retaliatory use of an oversight complaint in a criminal proceeding further violates the Due Process Clause of the Fifth Amendment, which guarantees a fair and impartial sentencing based solely on relevant, verified facts. *See United States v. Tucker*, 404 U.S. 443, 447 (1972) (sentencing must be based on "accurate information"). Here, the government's reliance on the TIGTA complaint as aggravating evidence was irrelevant, prejudicial, and constitutionally impermissible.

### D.     Acting Under Color of Federal Authority

The AUSA's conduct, along with that of the IRS and DHS personnel who facilitated disclosure of the TIGTA complaint, occurred **under color of federal authority**. Any person who, under color of law, willfully subjects another to the deprivation of rights secured by the Constitution violates **18 U.S.C. § 242** (Deprivation of Rights Under Color of Law). Similarly, conspiring to do so violates **18 U.S.C. § 241**. Federal employees and prosecutors act under color of law when they misuse the powers and privileges of their office to penalize constitutionally protected activity. *See United States v. Classic*, 313 U.S. 299, 326 (1941); *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

By obtaining and using Defendants' TIGTA complaint as evidence against them, the AUSA effectively converted a protected act of petitioning into an instrument of punishment, thereby depriving Defendants of their First and Fifth Amendment rights under color of federal authority.

### E.    Violations of DOJ Policy and Prosecutorial Ethics

The Department of Justice's **Justice Manual § 1-4.200** directs federal prosecutors to "avoid any appearance of conflict or misuse of investigative authority." The use of a TIGTA complaint—particularly one naming IRS and DHS personnel as subjects of misconduct—as an exhibit against the complainant creates a clear conflict of interest and undermines public confidence in prosecutorial impartiality.

The conduct also violates **ABA Model Rule 3.8,** which prohibits prosecutors from engaging in actions that unfairly prejudice the defendant or the integrity of the process, and **28 U.S.C. § 530B**, which binds DOJ attorneys to state bar ethical standards. Introducing the TIGTA complaint against its author at sentencing constitutes an abuse of process and professional misconduct.

### F.    Constitutional and Legal Consequences

The government's actions infringed multiple legal and constitutional safeguards:

- **Inspector General Act, 5 U.S.C. App. 3 § 7(b)** — Confidentiality of complainant information;
- **Privacy Act, 5 U.S.C. § 552a(b)** — Unauthorized use of protected records;
- **First Amendment** — Retaliation for petitioning the government;
- **Fifth Amendment** — Violation of due process and fair sentencing; and
- **18 U.S.C. §§ 241–242** — Deprivation of rights under color of federal authority.

The introduction of the TIGTA complaint not only prejudiced the sentencing proceeding but also chilled Defendants' and the public's right to report government misconduct without fear of reprisal. Such misuse of oversight mechanisms undermines both constitutional governance and public trust.

**G.      Remedy**

Because the government's conduct constitutes a violation of law, constitutional rights, and prosecutorial ethics, the Court should:

1. **Strike the TIGTA complaint and related exhibits** from the record;

2. **Vacate the sentence** imposed based on tainted and retaliatory evidence;

3. **Order an evidentiary hearing** to determine the extent of improper disclosure or prosecutorial misconduct; and

4. **Refer the matter to the Department of Justice Office of Professional Responsibility and TIGTA Internal Affairs** for investigation.

The retaliatory use of a protected Inspector General complaint against its filer is incompatible with the rule of law and constitutes a structural due process violation warranting vacatur of the judgment.

**H.      Effect of Complainant Identification**

The protections described above apply **even when a complainant identifies themselves** in a TIGTA filing. Naming oneself does **not** waive statutory confidentiality, Privacy Act protection, or constitutional safeguards.

The **Inspector General Act** protects the *purpose* of the complaint—oversight and accountability—not merely the anonymity of the filer. While TIGTA may disclose a complainant's identity "to the extent necessary" for investigative purposes, that disclosure does **not** authorize use of the complaint against the filer in a criminal proceeding.

Under the **Privacy Act (5 U.S.C. § 552a(b))**, disclosure for any purpose inconsistent with the reason for collection remains unlawful, even where the individual's identity is known. The same rule applies under the **First Amendment**: retaliation for filing a complaint or petitioning the government is unconstitutional regardless of anonymity. *See Hartman v. Moore*, 547 U.S. 250 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

Thus, Defendants' voluntary identification within their TIGTA complaint in no way legitimized its use against them. The government's reliance on that document at sentencing still constitutes an unauthorized disclosure, a retaliatory act under color of law, and a violation of due process and prosecutorial ethics. The improper use of this complaint therefore remains unlawful, irrespective of whether the complainants were anonymous or named.

**Ground Eight: <u>Improper Use of Defendants' Facebook Posts and Protected Expression</u>**

**<u>First and Fifth Amendment Violations, Misuse of Discovery Material</u>**

During sentencing, the Office of the Assistant United States Attorney introduced into the record several Facebook posts authored by Defendants. These posts—though publicly visible—expressed Defendants' personal opinions about the case, their experiences, and the government's handling of the March 11, 2024 incident. The prosecution used these posts, along with surveillance footage obtained through government discovery, as exhibits to argue aggravating

factors at sentencing. This conduct violated Defendants' constitutional rights and ethical limits governing prosecutorial conduct.

### A.    Retaliation for Protected Speech and Viewpoint Discrimination

Defendants' Facebook commentary constituted core expressive activity protected by the First Amendment. The posts reflected Defendants' personal perspectives on their prosecution and on the actions of IRS and DHS officials. Punishing or using such speech against a citizen—simply because it is critical of the government—constitutes impermissible viewpoint discrimination and retaliation. *See Hartman v. Moore*, 547 U.S. 250, 256–59 (2006); *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987); *United States v. Alvarez*, 567 U.S. 709, 716–18 (2012).

The government's introduction of these posts as sentencing exhibits was intended not to establish factual guilt, but to discredit and punish Defendants for their opinions. Such use chills constitutionally protected expression and violates the principle that the First Amendment "does not tolerate laws that cast a pall of orthodoxy over the public mind." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967).

### B.    Misuse of Discovery Material and Ethical Violations

Several of the Facebook posts referenced or displayed clips of surveillance video provided by the government during discovery. The AUSA's office then used those same posts—containing discovery footage—as aggravating evidence. This constitutes an improper **secondary use of discovery** material, contrary to **Fed. R. Crim. P. 16(d)(1)** and the DOJ's **Justice Manual § 9-5.001**, which prohibit using discovery for purposes unrelated to case preparation or trial.

Using materials disclosed in discovery to create or bolster public exhibits against the defendants undermines the fairness of the process and violates the spirit of **Brady v. Maryland**, 373 U.S. 83 (1963). The government may not turn the disclosure of discovery into a weapon for character assassination or punitive inference.

Such misuse also violates **ABA Model Rule 3.8(a)** (requiring prosecutors to act as ministers of justice) and **Rule 3.6** (Trial Publicity), which prohibits extrajudicial statements likely to prejudice a proceeding.

### C.    Due Process and Reliability of Sentencing Evidence

Under *United States v. Tucker*, 404 U.S. 443 (1972), and *Townsend v. Burke*, 334 U.S. 736 (1948), sentencing may be based only on accurate, relevant, and verified information. The Facebook posts were neither reliable nor relevant to any lawful sentencing factor under **18 U.S.C. § 3553(a)**. They were expressions of personal belief, not evidence of criminal conduct or intent. By using those posts to suggest lack of remorse or disrespect for the process, the government introduced subjective, prejudicial material unrelated to the statutory criteria for sentencing.

The use of expressive or political opinions as aggravating evidence violates due process because it punishes thought and speech rather than conduct. *See Dawson v. Delaware*, 503 U.S. 159, 167 (1992) (prohibiting punishment based on abstract beliefs).

### D.    Maintenance of Records Describing First Amendment Activity

The **Privacy Act, 5 U.S.C. § 552a(e)(7)**, prohibits federal agencies from maintaining records describing how individuals exercise First Amendment rights unless expressly authorized by statute or directly pertinent to an authorized investigation. By collecting and filing Defendants' Facebook posts into the sentencing record, the AUSA's office unlawfully created and maintained a record of Defendants' expressive activity, in violation of § 552a(e)(7).

Such conduct not only contravenes the Privacy Act but also undermines public confidence in the neutrality of federal prosecutors and the integrity of the judicial process.

**E.**    <u>**Remedy**</u>

The Court should:

1. **Strike all Facebook-related exhibits** and references from the record;

2. **Vacate the sentence** on grounds of constitutional and procedural error;

3. **Order an evidentiary hearing** to determine the scope of discovery misuse and retaliatory motive; and

4. **Refer the matter** to the DOJ Office of Professional Responsibility for investigation of potential ethical violations.

Punishing Defendants for their speech or use of discovery materials in expressive contexts violates the First and Fifth Amendments, the Privacy Act, and the government's ethical obligations under both statutory and professional rules. The convictions and sentences must therefore be vacated.

1
2
3
4

**Ground Nine: <u>Threatened or Retaliatory Prosecution for Use of Lawfully Disclosed</u>**

**<u>Discovery Materials — Violation of the First and Fifth Amendments, Resulting in Unlawful</u>**

**<u>Sentencing Delay</u>**

5
6
7
8
9

The government's threat and retaliatory use of IRS surveillance videos that had been

lawfully disclosed in discovery not only violated Defendants' First and Fifth Amendment rights,

but also **caused an unjustified delay in sentencing**—postponing the hearing from **August 13,**

**2025** to **October 8, 2025.**

10
11
12
13
14

That delay, triggered by the AUSA's improper introduction of the videos and related

Facebook posts, compounded the prejudice to Defendants and further violated Rule 32 of the

Federal Rules of Criminal Procedure and the constitutional guarantee of a fair and timely

sentencing.

15
16

A.    <u>Lawful Possession and Use of Discovery Materials</u>

17
18
19
20
21
22

Under **Fed. R. Crim. P. 16**, once discovery is produced, defendants may lawfully

possess and use those materials to prepare and support their defense. Absent a **protective order**

under **Rule 16(d)(1)**, defendants are entitled to reference such evidence publicly, especially

where it concerns alleged government misconduct. *United States v. Anderson*, 799 F.2d 1438,

1441 (11th Cir. 1986).

23
24
25
26
27

The IRS surveillance videos were voluntarily disclosed under Rule 16; no protective

order restricted their use. Therefore, Defendants' references to or publication of those materials

were **lawful and constitutionally protected**.

28

B.    <u>Retaliation for Protected Expression</u>

By using the discovery videos and related Facebook posts to justify harsher sentencing recommendations, and by implying that Defendants' use of those materials could lead to additional charges, the AUSA engaged in **retaliation for protected speech**. Such retaliation violates the First Amendment. *Hartman v. Moore*, 547 U.S. 250 (2006); *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

Defendants' dissemination of publicly available video evidence and commentary about their case is expressive conduct concerning matters of public concern. Punishing or chilling that expression constitutes impermissible viewpoint discrimination. *City of Houston v. Hill*, 482 U.S. 451, 462 (1987).

## C.    Due Process and Abuse of Prosecutorial Power

Threatening prosecution or introducing lawful discovery use as aggravating evidence also violates the **Fifth Amendment's Due Process Clause.** Sentencing must rest on verified, relevant facts—not on retaliatory motives or speculation. *Townsend v. Burke*, 334 U.S. 736 (1948); *United States v. Tucker*, 404 U.S. 443 (1972).

By turning lawful discovery use into a punitive factor, the prosecution acted **under color of federal authority** in violation of **18 U.S.C. § 242** and undermined the fairness of the proceeding.

## D.    Misuse of Discovery and Ethical Violations

The AUSA's conduct contravenes the **Justice Manual § 9-5.001** and **ABA Model Rule 3.8**, which forbid prosecutors from using discovery or evidence for retaliatory or extrajudicial

purposes. Rule 16 discovery is limited to trial preparation, not public relations or retribution. *United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) (dismissal warranted where prosecutorial misconduct undermines fairness).

### E.    Public-Record Nature of the Surveillance Footage

The IRS Taxpayer Assistance Center lobby is a public-access area. Surveillance footage of such areas is not privileged or classified; it documents public interactions on federal property. *United States v. Grace*, 461 U.S. 171 (1983). Once lawfully disclosed, the footage became part of the case record, and its use cannot be criminalized.

### F.    Resulting Unlawful and Prejudicial Sentencing Delay

The AUSA's improper introduction of new exhibits—including Defendants' Facebook posts and IRS surveillance footage previously disclosed in discovery—**forced Defendants to request additional time** to review, research, and prepare arguments in response. As a result, sentencing was continued from **August 13, 2025,** to **October 8, 2025.**

While Defendants technically agreed to the continuance, that agreement was **made under necessity**, not as a voluntary waiver of rights. The delay was *caused* by the government's last-minute and retaliatory introduction of improper materials, not by any act of the defense.

Under **Fed. R. Crim. P. 32(b)(1)**, sentencing must occur "without unnecessary delay." The delay here was "unnecessary" within the meaning of Rule 32 because it arose solely from the prosecution's misconduct and tactical use of irrelevant and prejudicial materials. The Ninth Circuit has held that a defendant's consent to a continuance **does not waive a claim of prejudice**

where the delay stems from prosecutorial error or misconduct. *United States v. Chapman*, 524 F.3d 1073, 1084–85 (9th Cir. 2008); *United States v. Myers*, 930 F.3d 1113, 1122 (9th Cir. 2019).

Moreover, prolonged delay in sentencing caused by the government's unfair tactics violates **due process** under *Betterman v. Montana*, 578 U.S. 437, 441–43 (2016). The Constitution protects defendants from "oppressive delay between conviction and sentencing" when that delay results in anxiety, uncertainty, or prejudice. Here, the two-month delay prolonged Defendants' exposure to reputational harm, financial hardship, and emotional distress, all caused by prosecutorial retaliation for lawful expressive conduct.

Thus, even though Defendants sought additional time to ensure fairness, the resulting delay remains **attributable to the government's misconduct** and constitutes a separate due process violation warranting judicial relief.

### G.    Cumulative Prejudice

This misconduct not only chilled Defendants' speech but also extended their exposure to uncertainty, public stigma, and continued restrictions pending sentencing. Such prejudice is cognizable under *Betterman*, which recognizes that prolonged pre-sentencing delay can inflict concrete harm. The delay amplified emotional distress, financial hardship, and reputational injury, all stemming from a retaliatory prosecutorial act.

### H.    Remedy

The Court should:

1. **Declare** that Defendants' use of discovery materials was lawful and protected activity;

2. **Strike** any references to that conduct from sentencing exhibits and findings;

3. **Vacate the sentence** on grounds of constitutional and procedural error;

4. **Order an evidentiary hearing** on the cause and purpose of the August-to-October 2025 delay; and

5. **Refer** the matter to the DOJ Office of Professional Responsibility for review of prosecutorial misconduct.

The retaliatory misuse of discovery evidence that caused a delay in sentencing violates the First and Fifth Amendments, **Fed. R. Crim. P. 32(b)(1)**, and the principles of due process. The judgment must therefore be vacated or modified to remedy this constitutional and procedural harm.

## PRAYER FOR RELIEF

For the reasons stated in Grounds One through Nine, Defendants respectfully request that this Honorable Court:

1. **Vacate the convictions and sentences** entered by the magistrate judge for lack of jurisdiction, due process violations, and prosecutorial misconduct.

2. **Alternatively, vacate the sentence** and remand for **de novo review and resentencing** before a different Article III district judge.

3. **Strike from the record** all exhibits, references, and findings derived from Defendants protected expressive activity, including the TIGTA complaint and social-media materials introduced by the AUSA's office;

4. **Order an evidentiary hearing** to determine the extent of government misconduct, the basis of the magistrate's findings, and the impact of tainted or withheld evidence.

5. **Dismiss the citations and informations** for failure to state a cognizable federal offense under **Fed. R. Crim. P. 58(b)(1)** and lack of statutory penalty authority.

6. **Declare** that Defendants' recording, expressive conduct, and submission of notarized documents constituted activity protected by the **First Amendment** and not subject to criminal penalty under **41 C.F.R. §§ 102-74.385 or 102-74.390**.

7. **Order the immediate return** of any property, records, or documents unlawfully withheld or destroyed by IRS or DHS personnel.

8. **Refer this matter** to the **Department of Justice Office of Professional Responsibility (OPR)**, the **Treasury Inspector General for Tax Administration (TIGTA) Internal Affairs**, and any appropriate federal oversight body for investigation of government misconduct and abuse of authority; and

9. **Grant any further relief** this Court deems just and proper to restore the integrity of these proceedings and vindicate Defendants' constitutional rights.

**Respectfully Submitted,**

By: _____
**THOMAS ANTHONY BOJO**
Defendant, *In Propria Persona*

By: _____
**EVELIA GIL**
Defendant, *In Propria Persona*

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that on this 17 day of October , 2025, I personally served a
true and correct copy of the foregoing **Motion for Review of Magistrate Judge's Decision by**
**District Court** upon:

4

5    **Office of the United States Attorney**
Eastern District of California

6    Attn: Assistant United States Attorney Jeffrey Spivak, Cody Chapple and Chan Hee Chu
2500 Tulare Street, Suite 4401

7    Fresno, California 93721

8    Service was made **in person** by hand delivery at the above address.

9    Dated: October 17 , 2025

10

11    _____

12    Thomas Anthony Bojo / Evelia Gilvillalobos
Defendant, Pro Se

13    3425 Parsley Lane
Bakersfield, CA 93309

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28